# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JESSICA LEA TYCIAK,<br>    Plaintiff, | :<br>:<br>: |
| v. | :    CIVIL ACTION NO. 25-CV-4991 |
| | : |
| MATHEW BRENNAN, *et al.*<br>    Defendants. | :<br>: |

## MEMORANDUM

**SCHMEHL, J.** -/s/ JLS                                                                                                                                          **DECEMBER 15, 2025**

Plaintiff Jessica Lea Tyciak filed this *pro se* civil rights action under 42 U.S.C. § 1983 against Pennsylvania State Troopers Mathew Brennan and Igor Karlov in their individual and official capacities, the Pennsylvania State Police ("PSP"), and three John Does based on her allegedly unlawful arrest, prosecution, and conviction. She seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Tyciak leave to proceed *in forma pauperis* and will dismiss the Complaint.

## I.  FACTUAL ALLEGATIONS[1]

Tyciak's claims arise from an August 28, 2023 incident which resulted in criminal proceedings filed against her for trespass and disorderly conduct in the Bucks County Court of Common Pleas. (Compl. at 1); *Commonwealth v. Tyciak*, CP-09-CR-0000385-2024 (C.P. Bucks). Tyciak, who characterizes herself as a "citizen journalist," alleges that she was using her cell phone to record public officials inside a Bensalem, Pennsylvania, Department of Motor

---

[1] The facts set forth in this Memorandum are taken from Tyciak's Complaint ("Compl.") (ECF No. 2). Publicly available records have also been consulted in this screening under § 1915(e)(2)(B). *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). The Court adopts the pagination assigned by the CM/ECF docketing system. Where the Court quotes from the Complaint, punctuation, spelling, and capitalization errors will be cleaned up as needed.

Vehicles office ("DMV") when DMV employees approached her and asked her to stop recording.[2] (Compl. at 1, 2.) She claims that a security guard asked that she cease recording, and then, allegedly at the behest of Trooper Brennan, the guard requested that she leave the DMV. (*Id.* at 1.) Tyciak states that she "remained calm and quiet," but that Brennan and Trooper Karlov "approached [her] aggressively" and asked her to go outside on the sidewalk. (*Id*. at 2.) As she stepped outside, she continued recording and Karlov stated, "come on outside, you can record us all you want out here." (*Id*.) Tyciak states that Brennan asked her "multiple times" to leave, and she agreed to leave "the public sidewalk." (*Id*.) He also allegedly requested her identification and "repeatedly" asked questions about whether she drove to the DMV and where her car was parked. (*Id*.) Tyciak refused to provide identification, but she asked three times whether she was being detained, without a response. (*Id*.) Tyciak claims that at some point Brennan stated that "standing there and talking is kinda being disorderly." (*Id*.) Karlov allegedly told her "don't you move," which "scared" Tyciak. (*Id*.) The DMV security guard then told her "you gotta go" and informed Tyciak that she could go back inside if she wanted service, but that she could not record. (*Id*.) Brennan asked if she would leave and exit the sidewalk, and Tyciak claims that she agreed but then asked directions to the Police Department so she could "file Complaints on both Officers for violating her Constitutional Rights." (*Id*.) Brennan arrested her. (*Id*.)

Tyciak claims that, during the arrest, the troopers searched her person and belongings without her consent. (*Id*.) Tyciak states that Brennan used obscenities and made offensive

---

[2] In her Complaint, Tyciak states that she has a YouTube channel and that she posted a video of the incident. (Compl. at 5.) On the channel, Tyciak describes herself as an "independent journalist, political activist, and artist." www.youtube.com/@RageGirlRadio (last visited October 30, 2025). The channel contains dozens of videos, including many titled as "audits," and involving police.

comments that she was a criminal and deserved "what he was doing to her." (*Id*.) She cried throughout the search and explained to the troopers that she was a survivor of rape. (*Id*.) When Tyciak requested that a female officer perform the search, Brennan replied "well, you play stupid fucking games and you win stupid fucking prizes." (*Id*.) Brennan "invasively searched" Tyciak three times. (*Id*.) Tyciak was handcuffed and placed in the back of a cruiser. (*Id*.) Brennan pointed out that, in light of the trespass charge, she would not be permitted to return to the property, so he said that he would drive her car from the DMV to the police department. (*Id*. at 2-3.) Tyciak asserts that she asked if a warrant was necessary to touch her car, to which Brennan allegedly replied, "[W]hy? What am I gonna find inside your car?" (*Id*. at 3.) She says Brennan took the keys out of her purse and "seized, searched, and drove her car from the DMV to the police department." (*Id*.) At some point after her arrest, Brennan fitted her with ankle shackles "so tight[ ] that there were cuts[ ] and bruises for two weeks." (*Id*.) Karlov laughed at her while she attempted to walk in the "restraints so tight[ ] she cried." (*Id*.)

On October 16, 2024, Tyciak was tried and found guilty of Criminal Trespass, in violation of 18 Pa. Cons. Stat. § 3503, and Disorderly Conduct in violation of 18 Pa. Cons. Stat. § 5503. (*Id*.); *Tyciak*, CP-09-CR-0000385-2024. At trial, the prosecutor played an edited video that Tyciak had posted on her YouTube channel, which contained commentary Tyciak had added to the recording after her arrest. (*Id*. at 3.) Tyciak claims that the judge "mocked the Plaintiff's mental health disorder, as Bipolar, denying Plaintiff a fair trial." (*Id*.) After Trooper Brennan testified about driving Tyciak's car from the DMV to where she was booked on the charges, the judge commented that Brennan had done Tyciak a favor. (*Id*.) She claims that the Bucks County Clerk of Court attended her trial and spoke with Tyciak outside of the courtroom, where he was "rude." (*Id*.) After being found guilty, Tyciak received a sentence of six months'

probation. (*Id.*) She claims that she suffered additional consequences because her landlord refused to renew her lease and she had to move to a less desirable neighborhood, plus she lost family relationships as a result of the charges. (*Id.*)

Tyciak filed this civil action pursuant to 42 U.S.C. § 1983 on August 27, 2025, alleging that Defendants violated her rights under the First, Fourth, and Fourteenth Amendments and Pennsylvania law. She maintains that her prior recordings of public officials, public servants, police and corrections officers "throughout Bucks County" served as the motivation for her arrest. (*Id.*) Tyciak claims that she suffered emotional distress, anxiety, panic attacks, and "lasting PTSD symptoms into the present." (*Id.* at 2.) She requests money damages, a declaratory judgment, and injunctive relief, as well as attorneys fees, fines, and costs.[3] (*Id.* at 5.)

---

[3] Declaratory relief is unavailable to adjudicate past conduct, so Tyciak's request for this type of relief, (Compl. at 5), must be dismissed. *See Corliss v. O' Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App' x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct.").

Tyciak's injunctive relief requests, (Compl. at 5), are likewise dismissed. Tyciak lacks standing to seek to "enjoin Defendants from retaliating against any future First Amendment activities," (Compl. at 5), because there is nothing in the Complaint to plausibly suggest that she is currently being subjected to or will likely be subjected to such retaliation. *See City of Los Angeles*, 461 U.S. 95, 105 (1983) (standing to pursue injunctive relief depends on whether plaintiff is "likely to suffer future injury"); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) ("Allegations of possible future injury are not sufficient to satisfy Article III." (internal quotations omitted)). She also wants to have her convictions expunged or the conditions of her sentence adjusted by lifting her ban at the Bensalem DMV. (Compl. at 5.) However, the sole federal remedy to challenge a conviction is a petition for writ of *habeas corpus*, and such a request is not cognizable in this civil rights action. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Even if she cannot obtain *habeas* relief because she is not in custody, § 1983 is still not available to her as a remedy to challenge a conviction and sentence. *Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006) ("[A] § 1983 remedy is not available to a litigant to whom *habeas* relief is no longer available.").

**III.    STANDARD OF REVIEW**

The Court will grant Tyciak leave to proceed *in forma pauperis* because it appears that she is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if it is frivolous, fails to state a claim, or seeks monetary damages from an immune defendant. *See id.* at (i)-(iii). Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

As Tyciak is proceeding *pro se*, the Court construes her allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*

Furthermore, the Court must dismiss the Complaint if it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Grp. Against Smog and Pollution, Inc. v. Shenango, Inc.,* 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues sua

sponte"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015).

## IV. DISCUSSION

### A. Official Capacity Claims and Claims Against the PSP

To the extent that Tyciak raises claims seeking money damages from the PSP, and Brennan and Karlov in their official capacities, (Compl. at 1, 5), the claims will be dismissed pursuant to § 1915(e)(2)(B)(iii) because they are barred under the Eleventh Amendment. The Eleventh Amendment bars suits against a state and its agencies in federal court when the state has not waived that immunity, and the Commonwealth of Pennsylvania has not waived that immunity. *See* 42 Pa. Cons. Stat. § 8521(b); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). The PSP is thus immune in Tyciak's federal lawsuit seeking damages. *See Frein v. Pennsylvania State Police*, 47 F.4th 247, 257 (3d Cir. 2022) ("The Pennsylvania State Police is an arm of the Commonwealth of Pennsylvania."); *Atkin v. Johnson*, 432 F. App' x 47, 48 (3d Cir. 2011) (*per curiam*) ("The District Court correctly determined that the Eleventh Amendment bars claims for damages against the PSP, a state agency that did not waive its sovereign immunity."). Moreover, suits against Commonwealth officials acting in their official capacities — like Troopers Brennan and Karlov — are really suits against the official's office and no different than suits against the Commonwealth itself; as such, they are also barred by the Eleventh Amendment. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991). Accordingly, the Court must dismiss Tyciak's claims for money damages alleged against the Pennsylvania State Police and Brennan and Karlov in their official capacities.

**B. Doe Defendants**

Tyciak identifies John Does #1-3 in the "Parties" section of the Complaint as Defendants and describes them as "unknown PSP officers involved in Plaintiff's arrest and searches." (Compl. at 1.) But that is the sole mention of the Doe Defendants; Tyciak does not assert any factual allegations or causes of action against John Does #1-3. As is the case for any party named as a defendant to an action, a plaintiff must allege how each defendant, including a John Doe, was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (quoting *Iqbal*, 556 U.S. at 677)); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). Tyciak has not pleaded facts or a basis of liability for any of the John Doe defendants, and the claims against them will be dismissed under § 1915(e)(2)(B)(ii) because they are not plausible. These claims fail for the additional reasons discussed below as to Tyciak's claims against Troopers Karlov and Brennan.

**C. Claims Asserted Under 42 U.S.C. § 1983 Against Individual Defendants**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Tyciak raises three § 1983 claims: retaliation in violation of the First Amendment (Count I); unlawful arrest and search in violation of the Fourth Amendment (Count II); and improper trial and wrongful conviction in violation of the Fourteenth Amendment Due Process Clause (Count

III). Even under a liberal construction of the Complaint, however, Tyciak has not alleged a plausible basis for a claim against any of the named Defendants.

### 1. Fourth Amendment Claims (Count II)

Tyciak asserts that Brennan and Karlov lacked probable cause when they arrested her and that, after placing her under arrest, they unreasonably searched her person and drove her car. (Compl. at 4.) "[T]he underlying command of the Fourth Amendment is always that searches and seizures be reasonable." *New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985). Nevertheless, "what is reasonable depends on the context within which a search takes place." *Id.* The elements of a § 1983 claim for unreasonable search and seizure are: (1) the actions of the police officers constituted a search or seizure within the meaning of the Fourth Amendment; and (2) the actions were unreasonable in light of the surrounding circumstances. *Brower v. Cnty. of Inyo*, 489 U.S. 593, 597-99 (1989).

#### a. False Arrest

The Court understands Tyciak's first claim—that police lacked probable cause when they arrested her for trespassing and disorderly conduct—to assert a claim for false arrest in violation of the Fourth Amendment.[4] To state a claim for false arrest under the Fourth Amendment, a plaintiff must allege facts establishing that he was arrested without probable cause. *James v. City of Wilkes Barre*, 700 F.3d 675, 680 (3d Cir. 2012) (citation omitted); *see also Noviho v.*

---

[4] Tyciak's false arrest claim accrued on the date of her arrest, August 28, 2023. *See LeBlanc v. Snavely*, 453 F. App'x 140, 142 (3d Cir. 2011) (*per curiam*) (stating that claims for false arrest typically accrue on the date of the arrest or assault). Her lawsuit filed on August 27, 2025 appears to be timely under Pennsylvania's two-year statute of limitations applicable to § 1983 actions. *See* 42 Pa. Cons. Stat. § 5524; *Wallace v. Kato*, 549 U.S. 384, 397 (2007) ("[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process.")

8

*Lancaster Cnty.*, 683 F. App'x 160, 164 (3d Cir. 2017) ("Fourth Amendment false imprisonment and false arrest claims rise and fall on whether probable cause existed for the arrest." (citation omitted)). Therefore, a plaintiff must allege facts sufficient to support a reasonable inference that the defendants acted without probable cause.

"[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995) (citation omitted). Courts "consider the existence of probable cause via a 'common sense approach' based on the totality of the circumstances, and viewed from the perspective of an objectively reasonable police officer." *Young v. City of Pittsburgh*, 562 F. App'x 135, 140 (3d Cir. 2014) (internal citation omitted). The standard is "not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988). For false arrest claims involving multiple charges, establishing probable cause on one charge insulates the defendant from liability. *See Rivera-Guadalupe v. City of Harrisburg*, 124 F.4th 295, 303 (3d Cir. 2024); *Bracken v. Twp. of Manor*, No. 23-1763, 2024 WL 4210535, at *3 n.5 (3d Cir. Sept. 17, 2024) (citing *Startzell v. City of Phila.*, 533 F.3d 183, 204 n.14 (3d Cir. 2008)).

"Under Pennsylvania law, a person commits criminal trespass if he enters or breaks into 'any building or occupied structure or separately secured or occupied portion thereof' while 'knowing that he is not licensed or privileged to do so.'" *Eaton v. Figaski*, No. 21-3094, 2022 WL 17831444, at *4 (3d Cir. Dec. 21, 2022) (quoting 18 Pa. Cons. Stat. § 3503(a)(1)). It "'merely requires proof of scienter, in other words, that the defendant had knowledge of a lack of

9

license or privilege to enter.'" *Id*. (quoting *Wright v. City of Phila.*, 409 F.3d 595, 603 (3d Cir. 2005), *abrogated on other grounds by Rivera-Guadalupe,* 124 F.4th 295).

According to her account in the Complaint, Tyciak was recording inside the DMV when a DMV security guard asked her to stop recording. (Compl. at 1.) Tyciak continued to record, and the guard asked her to leave. (*Id*.) Tyciak says that state troopers arrived and asked her to leave, and she stepped outside and continued to record. (*Id*. at 2.) She states that Brennan asked her "multiple times" to leave, and she agreed to leave "the public sidewalk." (*Id*.) But Tyciak did not. Although Tyciak had agreed to leave at that point, she continued to ask questions to the troopers, including whether she was being detained. (*Id*. at 2.) They did not answer. (*Id.*) Brennan remarked that Tyciak's continuing to "stand[ ] there and talk[ ] is kinda being disorderly." (*Id*.) The DMV security guard told her for a second time (according to Tyciak) that she needed to leave. (*Id*.) Tyciak did not. Brennan asked yet another time if she would leave and exit the sidewalk, and Tyciak claims that she agreed, but once again, she remained and engaged with law enforcement. (*Id*.)

Under the facts Tyciak alleges, she had been asked to leave at least twice by the DMV security guard and "multiple times" by Brennan. (*Id*. at 1, 2.) Given the numerous times that Tyciak had been asked to leave, with Tyciak responding that she would, Brennan and Karlov were clearly aware that Tyciak knew she was not permitted to be there. *See Eaton*, 2022 WL 17831444, at *4 (holding that it was reasonable for officers to believe that the plaintiff both was on the property and knew she was not permitted to be there); *Wright*, 409 F.3d at 602 (explaining that the probable cause standard is met when officers "if at the moment the arrest was made ... the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect

10

had committed or was committing an offense." (cleaned up)).  The facts alleged in the Complaint reflect that the Defendants had probable cause to arrest Tyciak for trespassing.  In other words, the arrest was justified.[5]

### b.  Search/Seizure Incident to Arrest

Tyciak asserts that the Defendants unlawfully searched her when she was arrested and then drove her car to the station where she was being charged.  (Compl. at 4.)  Under the Fourth Amendment, the reasonableness of the search or seizure depends on the context.  *T.L.O.*, 469 U.S. at 337.  Here, Tyciak claims that the search of her person occurred at the time of her arrest.  However, the Court has concluded from the Complaint that there was probable cause to arrest Tyciak.  Accordingly, "[t]he mere 'fact of the lawful arrest' justifies 'a full search of the person.'"  *Birchfield v. N. Dakota*, 579 U.S. 438, 460 (2016) (quoting *United States v. Robinson*, 414 U.S. 218, 235 (1973) (holding that a full search of a person arrested constitutes an exception to the Fourth Amendment warrant requirement and a "reasonable" search under the Amendment)).  Tyciak's claim alleging an unlawful search will be dismissed because it is not plausible.

Relatedly, Tyciak's claim alleging that Defendants seized her car without a warrant by taking the keys, searching the car, and driving it to the police station, likewise does not state a

---

[5] Underlying Tyciak's claims appears to be an assumption that she could not be arrested for trespassing on public property.  This assumption is incorrect.  "[T]he First Amendment requires neither equal nor unlimited access to public places."  *Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242, 1255 (3d Cir. 1992); *see also U. S. Postal Serv. v. Council of Greenburgh Civic Assocs.*, 453 U.S. 114, 129 (1981) ("[T]he First Amendment does not guarantee access to property simply because it is owned or controlled by the government.").  "[T]he right of access depends on the nature of the government property at issue," *Student Coal. for Peace v. Lower Merion Sch. Dist. Bd. of Sch. Directors*, 776 F.2d 431, 435 (3d Cir. 1985) (footnote omitted), and access may be limited in the interest of public safety and order, *Schenck v. Pro-Choice Network of W. New York*, 519 U.S. 357, 375 (1997).

11

plausible Fourth Amendment claim. (Compl. at 3). According to Tyciak, she had been arrested and placed in the back of the cruiser when Brennan took the keys from her purse and drove the car. (*Id*. at 2-3.) An inventory search of a vehicle is an exception to the warrant requirement of the Fourth Amendment. *Colorado v. Bertine*, 479 U.S. 367, 371-72 (1987) (explaining that "inventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger."); *see also United States v. Carey*, 72 F.4th 521, 531 (3d Cir. 2023) ("Detectives of the Harrisburg Police testified that it was standard procedure to perform an inventory search of any vehicle that was to be towed or impounded following an accident or arrest. Such a procedure complies with the Fourth Amendment." (internal citations omitted)), *cert. denied*, 144 S. Ct. 2617 (2024). Accordingly, Tyciak's claim alleging an unlawful seizure of her car without a warrant will be dismissed for failure to state a claim because it is implausible. 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2. First Amendment Retaliation Claim (Count I)

In her First Amendment claim, Tyciak contends that the Defendants "arrested [her] in retaliation for her recording public officials, public servants, and police officers throughout Bucks County, Pennsylvania, including the Bucks County Justice Center, the Doylestown Courthouse, the Doylestown Post Office, Bucks County Public Libraries, [and] the Clerk of Courts." (Compl. at 3.) Under the First Amendment, a government official is prohibited "from subjecting an individual to retaliatory action, including criminal prosecution, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). "In order to establish a First Amendment retaliation claim, a plaintiff must prove (1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the

retaliation." *George v. Rehiel*, 738 F.3d 562, 585 (3d Cir. 2013) (citation and quotation marks omitted). A plaintiff alleging First Amendment retaliatory arrest must show the absence of probable cause. *See Nieves v. Bartlett*, 587 U.S. 391, 402 (2019) ("The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest.").

Tyciak's First Amendment claim is not plausible because her Complaint fails to factually link the allegedly protected behavior—her prior recordings of officials in various settings in Bucks County—with the arrest by law enforcement. *George*, 738 F.3d at 585. Tyciak does not claim that she knew the Defendants, or that they knew her; and she admits that she refused to provide any identifying information. (Compl. at 2.) Causation, therefore, has not been pleaded. Moreover, in order to meet the pleading standard for retaliation, Tyciak would have to plausibly allege that Brennan and Karlov did not have probable cause to arrest her. However, as explained above in section C.1.a., probable cause existed for Tyciak's arrest, so she cannot prevail on her retaliation claim. *See Grant v. City of Philadelphia*, 637 F. Supp. 3d 247, 266 (E.D. Pa. 2022) (rejecting First Amendment retaliation claim based on prior analysis that defendants had probable cause to arrest plaintiff).

### 3. Fourteenth Amendment Due Process Claim (Count III)

Tyciak alleges that her right to a fair trial under the Fourteenth Amendment was violated by the use of an edited version of her YouTube video and alleged bias of the judge during trial, which resulted in her wrongful conviction. (Compl. at 4.) These claims cannot proceed because of her intact convictions, however. "[T]o recover damages [or other relief] for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order,

declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote and citation omitted); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation) — no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) — if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis omitted)).

Here, "[a]t bottom, [Tyciak's claims] allege that her criminal proceedings were begun and conducted unlawfully and without probable cause, resulting in her wrongful conviction." *Coello v. DiLeo*, 43 F.4th 346, 354 (3d Cir. 2022) (concluding that the plaintiff's Fourteenth Amendment claims fell "in *Heck*'s sphere"). Tyciak's claims concerning the fairness of her trial are tantamount to malicious prosecution claims.[6] *See id.* (analogizing plaintiff's claims concerning events at trial to malicious prosecution claims); *Wright v. City of Philadelphia*, 229 F. Supp. 3d 322, 332 (E.D. Pa. 2017) (ruling that the claims, which "involved the trial process itself," were most akin to malicious prosecution claims (citing *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) for the proposition that a § 1983 due process claim that challenges the fairness of the prosecution is analogous to malicious prosecution for accrual purposes)). As such, they accrue only if her convictions are "reversed on direct appeal, expunged by executive order,

---

[6] "To prove a Fourth Amendment malicious prosecution claim, a plaintiff must show: '(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.'" *Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016) (quoting *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007)).

declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck* 512 U.S. at 486-87; *Nash v. Kenney*, 784 F. App'x 54, 57 (3d Cir. 2019) (*per curiam*) (deciding that plaintiff's malicious prosecution claim was barred by the favorable-termination rule of *Heck*). These claims will accordingly be dismissed without prejudice.

### D. State Law Claims (Counts IV-VIII)

Tyciak seeks to assert five claims under Pennsylvania law against Defendants Brennan and Karlov: false arrest/false imprisonment, assault and battery, intentional infliction of emotional distress, trespass to chattels, and excessive force and punishment. (Compl. at 4.) However, she has not pleaded an independent basis for the Court's jurisdiction over those claims.[7] District courts may exercise jurisdiction over cases raising claims exclusively under state law if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,'" which means that "unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co.*, 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co.*, 800 F.3d at

---

[7] Because the Court has dismissed Tyciak's federal claims, the Court will not exercise supplemental jurisdiction over any state law claims.

105 ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp.*, 547 U.S. at 342 n.3)).

Tyciak states that she resides in Allentown, Pennsylvania, but she does not allege the citizenship of any of the Defendants. The Court notes that the fact that she sued the PSP and employees of the PSP suggests that some, if not all, of the Defendants are Pennsylvania citizens. Accordingly, the state law claims will be dismissed without prejudice for lack of subject matter jurisdiction.

## VI.  CONCLUSION

For the foregoing reasons, the Court will grant Tyciak leave to proceed *in forma pauperis* and dismiss her Complaint in its entirety. Leave to amend will not be given because the Court concludes that amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 (3d Cir. 2002).

An appropriate Order follows, which dismisses this Case.

**BY THE COURT:**

 /s/ Jeffrey L. Schmehl
**JEFFREY L. SCHMEHL, J.**
